IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHNSON MATTHEY PROCESS TECHNOLOGIES, INC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. CV420-322 |
| G.W. ARU LLC, | ) ) | |
| Defendant. | ) ) | |

## O R D E R

Before the Court is Defendant G.W. Aru, LLC's, Motion for Attorney's Fees (Doc. 29), which Plaintiff Johnson Matthey Process Technologies, Inc., ("JMPTI") has opposed (Doc. 32).

### BACKGROUND

JMPTI brought this action against Defendant G.W. Aru and JMPTI's former employee[1] Katherine J.M. Hovey[2] asserting claims against both for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and the Georgia Trade Secrets Act ("GTSA"). (Doc. 1.) In summary, JMPTI alleged that Ms. Hovey downloaded JMPTI's trade secrets two days prior to resigning and

---

[1] G.W. Aru contends that Ms. Hovey was actually employed by Johnson Matthey PLC, JMPTI's United Kingdom based parent company. (Doc. 29, Attach. 1 at 2.) The discrepancy is not relevant to this order which concerns whether JMPTI raised its claims against G.W. Aru in bad faith.
[2] On July 15, 2021, JMPTI gave notice that it had settled its claims with Ms. Hovey (Doc. 28), and the Court subsequently dismissed her from this action (Doc. 30).

planned to use them in her employment with G.W. Aru, JMPTI's competitor in the oil refinery technology industry.[3] (Doc. 26 at 1-4.) On February 19, 2021, G.W. Aru moved to dismiss JMPTI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12), and on July 8, 2021, the Court granted the motion and dismissed JMPTI's claims against G.W. Aru (Doc. 26). In its order, the Court found that JMPTI failed to state a claim for misappropriation under either the DTSA or the GTSA because it did not adequately allege facts showing G.W. Aru acquired JMPTI's trade secrets or disclosed, used, or threatened to disclose or use JMPTI's trade secrets. (Id. at 14, 19.)

Now, G.W. Aru moves for attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2), 18 U.S.C. § 1836(b)(3)(D), and O.C.G.A. § 10-1-764, claiming that JMPTI instituted and maintained this action in bad faith. (Doc. 29 at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) governs the procedural requirements for a prevailing party to recover attorney's fees. See Northstar Healthcare Consulting, LLC v. Magellan Health, Inc., No. 1:17-CV-1071-ODE, 2020 WL 10486256, at *29 (N.D. Ga. Feb. 20, 2020) (citations omitted); see also S.D.

---

[3] A more comprehensive description of JMPTI's allegations can be found in the Court's order granting G.W. Aru's motion to dismiss. (Doc. 26 at 1-5.)

2

Ga. L.R. 54.2(b) (specifying that a motion for attorney's fees "shall be filed pursuant to Federal Rules of Civil Procedure 54(d)(2)"). "However, Rule 54(d)(2) 'creates a procedure but not a right to recover[] attorneys' fees.' " Northstar, 2020 WL 10486256, at *29 (quoting MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1280 (9th Cir. 1999)). Therefore, among other requirements,[4] a prevailing party must specify in its motion "the judgment and the statute, rule, or other grounds entitling the movant to the award[.]" Fed. R. Civ. P. 54(d)(2)(B)(ii); Morsette v. Brewster, No. 1:13-CV-00011-AT, 2013 WL 12111104, at *3 (N.D. Ga. Oct. 31, 2013) ("[A] prevailing party is not entitled to recover an award of attorney's fees [under Rule 54(d)(2)] absent express statutory authority." (citations omitted)).

## ANALYSIS

G.W. Aru, in its motion, claims it is entitled to attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1764. (Doc. 29 at 1.) Both the DTSA and GTSA permit the award of "reasonable attorney's fees to the prevailing party" if a claim of misappropriation is "made in bad faith." 18 U.S.C. § 1836(b)(3)(D); O.C.G.A. § 10-1-764. Based on the parties' briefs, the relevant

---

[4] A movant under Rule 54(d)(2) must also file their motion within 14 days after the entry of judgment; state the amount sought or provide a fair estimate of it; and disclose, upon court order, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B).

question for the Court to answer is whether JMPTI brought its misappropriation claims against G.W. Aru in bad faith.[5]

Neither statute defines "bad faith," and the Court is not aware of any Georgia state court decisions interpreting O.C.G.A. § 10-1-764. See HCC Ins. Holdings, Inc. v. Flowers, No. 1:15-cv-3262-WSD, 2017 WL 5118224, at *1 (N.D. Ga. Nov. 6, 2017) ("Georgia authority applying O.C.G.A. § 10-1-764 is almost nonexistent." (citing Greenberg Farrow Architecture, Inc. v. Perkins Eastman Architects, P.C., No. 1:12-cv-1435-ODE, 2014 WL 12694260, at *6 (N.D. Ga. July 2, 2014)). Following out-of-circuit authority, federal district courts in Georgia have applied the so-called Stilwell test[6] to determine whether a party brought a misappropriation claim in bad faith under either the DTSA or GTSA. See, e.g., Northstar, 2020 WL 10486256, at *29 (utilizing Stilwell test to evaluate motion for attorney's fees brought under the DTSA and GTSA); Greenberg, 2014 WL 12694260, at *6 ("[T]he Court is guided by the out-of-circuit authority interpreting the bad faith language used in the Georgia trade secrets statute or in another state law patterned after the Uniform Trade Secrets Act."); HCC Ins., 2017 WL 5118224, at *1 (same). As both parties rely on the

---

[5] In its brief in opposition, JMPTI does not contend that G.W. Aru was not a "prevailing party" or failed to comply with any of the other procedural requirements of Rule 54(d)(2).
[6] Stilwell Dev., Inc. v. Chen, No. CV86-4487-GHK, 1989 WL 418783, at *3 (C.D. Cal. Apr. 25, 1989).

Stilwell test in their briefs, the Court sees no reason to depart from the approach followed by other courts in this circuit. Therefore, the Court will use the Stilwell test to determine whether G.W. Aru is entitled to attorney's fees under the DTSA and GTSA.

The Stilwell test is a two-pronged analysis that has been generally adopted to evaluate claims of bad faith in the context of trade secret misappropriation. Farmers Edge Inc. v. Farmobile, LLC, No. 8:16CV191, 2018 WL 3747833, at *6 (D. Neb. Aug. 7, 2018) (citing Gabriel Techs. Corp. v. Qualcomm Inc., No. 08CV1992 AJB (MDD), 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), aff'd, 560 F. App'x 966 (Fed. Cir. 2014) (per curiam)). That is, "[t]he party seeking an award of attorney's fees must show (1) the objective speciousness of [an] opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action for an improper purpose." Id. (first citing Gabriel Techs. Corp., 2013 WL 410103, at *7; and then citing CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1111 (9th Cir. 2007)); Kipu Sys. LLC v. Zencharts LLC, No. 17-24733-Civ-WILLIAMS/TORRES, 2021 WL 1891710, at *7 (S.D. Fla. Apr. 6, 2021). However, the failure to properly state a claim, by itself, will not warrant an inference of bad faith justifying an award of attorney's fees. See Temurain v. Piccolo, No. 18-62737-CIV-SMITH/VALLE, 2021 WL 1121003, at *6 (S.D. Fla. Mar. 24, 2021) (citing Heald v. Ocwen

5

Servicing, LLC, No. 3:13-cv-993-J-34JRK, 2014 WL 4639410, at *6
n.16 (M.D. Fla. Sept. 16, 2014)); see also Mar. Mgmt., Inc. v.
United States, 242 F.3d 1326, 1333 (11th Cir. 2001) (per curiam)
("In determining the propriety of a bad faith award, 'the inquiry
will focus primarily on the conduct and motive of a party, rather
than on the validity of the case.' " (quotation omitted)).

In its motion, G.W. Aru first argues that JMPTI's claims were
objectively specious because JMPTI possessed no proof that G.W.
Aru acquired, used, or disclosed the trade secrets from Ms. Hovey,
making it impossible for JMPTI to state a claim for
misappropriation. (Doc. 29, Attach. 1 at 12-14.) Second, G.W. Aru
argues that JMPTI's acrimonious relationship with G.W. Aru's
founder, Guido Aru, and its failure to complete the agreed upon
remediation process with Ms. Hovey demonstrates subjective bad
faith on the part of JMPTI. (Id. at 15-17.) To support its claims,
G.W. Aru provided the court with several attachments: A declaration
of Guido Aru stating that he reported unethical conduct on the
part of Johnson Matthey PLC after leaving and starting a competing
business (Doc. 29, Attach. 2 at 3-4); declarations of two former
JMPTI and Johnson Matthey PLC employees[7] who attended a company

---

[7] One of the employees, Dawn Sagaser, states she was an employee
of "Johnson Matthey Inc." (Doc. 29, Attach. 3 at 2.) Based on the
content of John T. Gordon's declaration, it appears Johnson Matthey
Inc. is the direct parent company of JMPTI and some employees of
Johnson Matthey Inc. also work for JMPTI. Because the companies

meeting in 2018, at which another JMPTI employee reportedly suggested that JMPTI should "bury Guido with lawsuits and attorneys' fees" (Doc. 29, Attach. 3 at 6; Doc. 29, Attach. 4 at 4); declarations of Michael Dailey, attorney for G.W. Aru and Ms. Hovey (Doc. 29, Attach. 5; Doc. 37, Attach. 1); and communications between Mr. Dailey and JMPTI regarding the remediation process with Ms. Hovey. (Doc. 29, Attach. 5.)

In response, JMPTI claims that the fact that Ms. Hovey admittedly stole JMPTI's trade secrets prior to going to work for G.W. Aru shows that its misappropriation claims had evidentiary support. (Doc. 32 at 10-14.) JMPTI further contends that Mr. Dailey misrepresents the circumstances of the remediation process and that it was the suspicious conduct of Mr. Dailey and Ms. Hovey that led JMPTI to bring this suit. (Id. at 4-5, 12-14.) JMPTI also rejects as speculative G.W. Aru's theory that the decision to sue G.W. Aru had any connection to the "bury him in legal fees" comment allegedly made in 2018. (Doc. 32 at 15-16.) JMPTI provided the Court with the declarations of John T. Gordon, JMPTI's managing director, and Barbara Rittinger Rigo, the lawyer who represented JMPTI in the pre-litigation negotiations between JMPTI and Ms. Hovey. (Doc. 32, Attach. 1; Doc. 32, Attach. 2.) Having described the parties' arguments and supporting exhibits, the Court will now

---

are so interrelated, the Court will refer only to JMPTI to avoid confusion.

consider whether JMPTI's claims were both objectively specious and made in subjective bad faith.

I.   <u>OBJECTIVE SPECIOUSNESS</u>

A prevailing party can establish that the claim against it was objectively specious by demonstrating "that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm." <u>Kipu</u> 2021 WL 1891710, at *8 (citing <u>Gabriel Techs. Corp.</u>, 2013 WL 410103, at *7. "Objective speciousness exists where 'there is a complete lack of evidence as to every element of a misappropriation of trade secrets claim.' " <u>Northstar</u>, 2020 WL 10486256, at *30 (first quoting <u>HCC Ins.</u>, 2017 WL 5118224, at *2; and then citing <u>Hill v. Best Med. Int'l, Inc.</u>, Nos. 07-1709, 08-1404, 09-1194, 2011 WL 6749036, at *4 (W.D. Pa. Dec. 22, 2011)). Courts in this circuit have found that "[a] plaintiff can overcome the question of objective speciousness by presenting any evidence to support at least some elements of its misappropriation claim." <u>Id.</u> (citing <u>HCC Ins.</u>, 2017 WL 5118224, at *2.) Thus, the Court must consider whether JMPTI introduced some evidence to support its misappropriation claim under the DTSA and GTSA. <u>Id.</u>

To prove a claim for misappropriation of trade secrets under both the GTSA and DTSA, a Plaintiff must show that (1) it had a trade secret; and (2) the opposing party misappropriated the trade secret. (Doc. 26 at 8); <u>see also</u> <u>United States Sec. Assocs., Inc.</u>

v. Lumby, No. 1:18-CV-5331-TWT, 2019 WL 8277263, at *10 (N.D. Ga. Sept. 25, 2019) ("To state plausible claims under both the GTSA and DTSA, the Plaintiff must assert that (1) it had a trade secret; and (2) the opposing party misappropriated that trade secret."). Here, the Court agrees that JMPTI lacked evidence to satisfy the second element of a misappropriation claim against G.W. Aru because JMPTI still has not alleged facts which demonstrate G.W. Aru acquired, used, disclosed, or threatened to use or disclose the documents obtained by Ms. Hovey. (See Doc. 26, at 14, 19.) Instead, JMPTI's evidence shows only that Ms. Hovey misappropriated the documents in question, not that G.W. participated in the misappropriation. However, the Court's determination that "there was lack of evidence as to part of [JMPTI's] misappropriation claim does not support that [JMPTI's] claim was [] objectively specious." HCC Ins., 2017 WL 5118224, at *2 n.4. The Court must also inquire whether JMPTI could have satisfied the first element of its claims— that the stolen documents were in fact trade secrets.

The GTSA defines trade secrets as information not commonly known by or available to the public that:

    (A)   Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    (B)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4). Trade secrets can include methods, financial plans, product plans, or lists of actual or potential customers. Id. Under the DTSA, a "trade secret" includes

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically or in writing[.]

18 U.S.C. § 1839(3). The DTSA also requires that the information "derive[] independent economic value, actual or potential, from not being generally known" and the owner must take "reasonable measures to keep such information secret[.]" Id.

The majority of G.W. Aru's brief is focused on whether JMPTI had evidence to support the second element of a misappropriation claim; however, G.W. Aru argues in a footnote that JMPTI also failed to plausibly allege that the documents in question were trade secrets. (Doc. 29, Attach. 1 at 13 n.4.)    The Court disagrees. Although not addressed in the order granting G.W. Aru's motion to dismiss, the Court finds that the complaint adequately alleged the type of information Ms. Hovey downloaded, the confidential nature of the information, and steps taken to ensure the secrecy of the information, including requiring employees to sign confidentiality agreements. (Doc. 1 at ¶¶ 20-25.) The

declaration of JMPTI's managing director Mr. Gordon provides evidentiary support for these allegations. (Doc. 32, Attach. 1.) Mr. Gordon describes the nature of the stolen files, the steps JMPTI took to maintain the confidential nature of this information, and the value this information derives from being kept confidential. (Id. at 2.) Because JMPTI demonstrated it had evidence to support part of its misappropriation claim, the Court concludes that its claims were not objectively specious. Northstar, 2020 WL 10486256, at *31 (finding the plaintiff "need only present 'any evidence' to support one of these elements to succeed" (citing HCC Ins., 2017 WL 5118224, at *2 n.4.)). Accordingly, the Court finds G.W. Aru is not entitled to attorney's fees under the DTSA or GTSA.

II.  SUBJECTIVE BAD FAITH

Even if the Court found that JMPTI's claims were objectively specious, the Court does not find that JMPTI brought this action with subjective bad faith. "Subjective misconduct exists if 'a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Northstar, 2020 WL 10486256, at *33 (quoting Greenberg, 2014 WL 12694260, at *6). Subjective bad faith may be inferred from "evidence that a party 'intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper motive.' " Gabriel Techs. Corp., 2013 WL 410103, at *7 (quotation omitted). To prove

subjective bad faith, a prevailing party may either: "(1) rely on direct evidence of plaintiff's knowledge; or (2) ask the Court to infer it 'from the speciousness of plaintiff's trade secret claim and its conduct during litigation.' " Northstar, 2020 WL 10486256, at *33 (quoting Greenberg, 2014 WL 12694260, at *6).

Based on the evidence before the Court, it does not appear that JMPTI brought this action with an intent to harass or any other improper motive. The "bury him in legal fees" comment that G.W. Aru references was made over two years before the institution of this action; further, there is no indication Mr. Gordon, who decided that JMPTI should bring this action, had any knowledge of the comment. (Doc. 32, Attach. 1 at 6.) Additionally, despite G.W. Aru's assertions, JMPTI did not sue G.W. Aru as soon as an opportunity arose. Rather, upon learning that Ms. Hovey had improperly downloaded the trade secret information, JMPTI began a remediation process through which it sought assurances that Ms. Hovey would not share the trade secret information with anyone else, especially G.W. Aru. (Doc. 32, Attach. 1 at 3; Doc. 32, Attach. 2 at 1-2.)

To show JMPTI knew that its misappropriation claims were meritless, G.W. Aru relies on the fact that Ms. Hovey provided sworn assurances that she did not disclose the trade secret information with G.W. Aru and that JMPTI filed this lawsuit after being notified that Grant Thornton had destroyed Ms. Hovey's

12

Toshiba Drive. (Doc. 29, Attach. 1 at 17.) The communications between the parties, however, show that JMPTI repeatedly raised concerns about the manner in which Ms. Hovey and Mr. Dailey intended to handle the trade secret information. (Doc. 32, Attach. 2 at 7-22.) Specifically, counsel for JMPTI expressed concern over Grant Thornton's inability to act as a neutral third party in verifying that no trade secret information had been removed from the Toshiba Drive and that the parties had not agreed to a forensic review of Ms. Hovey's iCloud account or personal computer. (Id. at 15, 20.)

The fact that JMPTI did not file suit until after Ms. Hovey proceeded, without JMPTI's approval, to have Grant Thornton destroy the Toshiba Drive supports JMPTI's claims that it did not sue Ms. Hovey or G.W. Aru until after it became clear that the parties would be unable to resolve their dispute through remediation. Additionally, there appears to have been legitimate concern on JMPTI's part as to whether Ms. Hovey was or was not providing work for G.W. Aru. (Doc. 32, Attach. 1 at 5-6.) In light of these facts, the Court concludes that JMPTI, after failing to come to an agreement regarding the protocol for the return or destruction of its trade secret information, believed in good faith that it was necessary to bring its misappropriation claims against both Ms. Hovey and G.W. Aru in order to protect its confidential information. Notably, no discovery has been conducted in this case,

13

and this is not a case where "plaintiff pursued its trade secret claim through trial, even though it knew it lacked proof" as to an element of its claims. See JLM Formation, Inc. v. Form+Pac, No. C 04-1174 CW, 2004 WL 1858132, at *3 (N.D. Cal. Aug. 19, 2004) (citing Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1263, 116 Cal. Rptr. 2d 358, 369 (2002)). Although JMPTI was mistaken about the merits of its claims against G.W. Aru, the Court does not find JMPTI brought or maintained its claims in bad faith.[8] See CleanFish, LLC v. Sims, No. 19-cv-03663-HSG, 2020 WL 7353462, at *1 (N.D. Cal. Dec. 15, 2020) ("Plaintiff's decision to pursue its claims despite Defendant's insistence that the claims lacked merit does not establish subjective bad faith."); cf. Northstar, 2020 WL 10486256, at *33 (finding plaintiff acted with subjective bad faith where plaintiff "knew or should have known that the documents it sought to protect were not considered trade secrets"). As a result, G.W. Aru's motion for attorney's fees (Doc. 29) is **DENIED**.

### CONCLUSION

Based on the foregoing, G.W. Aru's motion for attorney's fees (Doc. 29) is **DENIED**. As a result, JMPTI's motion for extension of

---

[8] Because the Court does not find that JMPTI engaged in bad-faith litigation, the Court also declines to award attorney's fees pursuant to its inherent authority. Blanco GMBH+Co. KG v. Vlanco Indus., LLC, 992 F. Supp. 2d 1225, 1258 (S.D. Fla. 2014) ("The key to invoking inherent authority is a finding of bad-faith conduct." (citations omitted)).

time to object to G.W. Aru, LLC's attorney's fees (Doc. 36) is **DIMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 31ˢᵗ day of March 2022.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA